# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION
### 3:23-cv-00006-RJC-SCR

|  |  |
|---|---|
| KYRE MITCHELL, | ) |
| | ) |
| *Plaintiff* | ) |
| | ) |
| v. | ) |
| | ) |
| CITY OF CHARLOTTE, *et al.*, | ) |
| | ) |
| *Defendants.* | ) |
| | ) |
| | ) |

## MEMORANDUM AND RECOMMENDATION AND ORDER

**THIS MATTER** is before the Court on Defendants' Motion to Dismiss Plaintiff's First Amended Complaint (the "Motion to Dismiss" or the "Motion"). (Doc. No. 31).

The Motion has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1) and is now ripe for the Court's consideration.

For the reasons set forth below, the undersigned respectfully recommends that Defendants' Motion to Dismiss be granted in part and denied in part.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

### A.  Procedural Background

On January 5, 2023, Plaintiff filed this action, and soon after, on April 20, 2023, filed the operative First Amended Complaint (the "Complaint"). (Doc. No. 27). Plaintiff's Complaint brings claims against (1) the City of Charlotte (the "City"); (2) two current or former Charlotte-

Mecklenburg Police Department ("CMPD") employees in their official capacities only;[1] (3) certain current or former CMPD employees in their official and individual capacities characterized as CMPD supervisory officers (the "Individual Supervisory Defendants");[2] (4) certain current or former CMPD employees in their official and individual capacities characterized as CMPD officers (the "Individual Officer Defendants");[3] and (5) John Does 1-50, alleged "remaining, unidentified CMPD and [Civil Emergency Unit ("CEU")] commanders and CEU officers involved in the protests, deployed at the street level" (Doc. No. 27 ¶ 45), in their individual capacities (the "John Doe Defendants") (the Individual Supervisory Defendants, Individual Officer Defendants, and John Doe Defendants collectively referred to as the "Individual Defendants" and all Defendants collectively referred to as the "Defendants").  Plaintiff's Complaint brings thirteen claims against the Defendants, including for alleged constitutional violations under 42 U.S.C. § 1983, several state tort law claims, and alleged violations of the North Carolina constitution. Defendants now seek dismissal of Plaintiff's Complaint or, alternatively, ask the Court to strike certain allegations in Plaintiff's Complaint.

### B.  Factual Background

Accepting the facts in Plaintiff's First Amended Complaint as true for the purposes of considering the Motion to Dismiss, Plaintiff Kyre Mitchell participated in a series of protests against police violence in Charlotte, North Carolina, in late May 2020.  (Doc. No. 27 ¶ 53).  On May 30, 2020, Plaintiff Kyre Mitchell attended one of these protests.  Id. ¶¶ 2, 11,53, 69, 84.

---

[1]CMPD Chief Johnny Jennings and retired CMPD Deputy Chief Steven Voorhees.  (Doc. No. 27 ¶¶ 17, 38).
[2]CMPD supervisory officers including Retired CMPD Chief Kerr Putney, Robert Dance, Nelson Bowling, Christopher Rorie, and Scott Sherwood.  (Doc. No. 27 ¶¶ 16, 19, 39).
[3]CMPD officers Kenneth Tucker, Michael Putnam, Daniel Martinez, JC Long, William Broadway, Gary Potter Jr., Casey Shue, Mason Brian Braswell, Edward Kaminski, S. Dowell, Amanda Keller, and Johnny Lee.  (Doc. No. 27 ¶¶ 19, 38)

During the protest, Plaintiff observed the demonstrations, protested peacefully, and did not exhibit behavior suggesting he posed a threat to property or the safety of others, nor was he arrested for any crimes during the protest.  Id. ¶¶ 82, 86-87.

At approximately 9:13 p.m., Plaintiff witnessed police filing out of a parking lot next to the Spectrum Center and shoving multiple protestors to the ground.  Id. ¶ 92.  Protestors broke into smaller groups and began to disintegrate.  Id.  Plaintiff claims the police deployed rubber and pepper ball bullets, flashbangs, and chemical weapons, and began to corral protestors towards a local hotel.  Id.  Plaintiff alleges officers shot protesters with projectiles at close range without warnings, injuring numerous people.  Id.  Plaintiff states he was fired upon and struck by pepper ball guns and forced to run through clouds of gas.  Id.  He suffered a burning sensation to his skin and eyes, and at times coughed violently to clear the noxious gas from his lungs and airways.  Id.

Around 11:30 p.m., a crowd of protesters came to a standstill in Uptown Charlotte.  Id. ¶ 93.  Plaintiff alleges Defendants then "kettled"[4] peaceful protestors.  Id. ¶¶ 7, 93.  Plaintiff states he was not directly near the police, and many people in the area were not participating in the protest.  Id.  Plaintiff then alleges that the City and CMPD, without notice or instruction to disperse, deployed tear gas, pepper bullets, and flashbang grenades in the area that contained peaceful protestors and bystanders.  Id. ¶ 94.  At this time, Plaintiff indicates he was protesting peacefully and never engaged in activity that could be considered violent.  Id. ¶ 97.

Plaintiff noticed a white car immediately beside him that had a family with children in the car.  Id.  Plaintiff then observed one of the Individual Defendants[5] standing 50 feet away from him allegedly throw a device that landed directly at Plaintiff's feet.  Id. ¶¶ 95-98.  To protect people in

---

[4] Kettling is defined in the Complaint as corralling.  (Doc. No. 27 ¶ 7).
[5] At this stage, Plaintiff has not identified which specific Individual Defendant actually threw the device, but instead alleges that it was one of the thirteen officers who stated they had thrown like devices on May 30, 2020.  (Doc. No. 27 ¶ 97).

the immediate vicinity, including the family in a car next to him, Plaintiff states that he quickly picked up the device to throw it in the opposite direction from where the family and any other people were located. Id. The device exploded in his hand. Id. Plaintiff sustained an explosion injury to his right hand, which was badly bleeding and injured. Id. ¶¶ 8, 96, 122. Plaintiff was taken by ambulance to the emergency room where doctors performed emergency surgery. Id. ¶¶ 122-124. Plaintiff's right hand sustained serious injuries including the loss of his right ring and middle fingers. Id.

Despite knowing of Plaintiff's injuries through Twitter on June 1, 2020, Plaintiff maintains that the City did not impose any discipline against or provide any additional training for any Individual Defendants who threw the device towards Plaintiff. Id. ¶¶ 100, 101, 103.

## II.     STANDARD OF REVIEW

In reviewing a Rule 12(b)(6) motion, "the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff." Mylan Labs., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993). The plaintiffs' "[f]actual allegations must be enough to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Id. at 563. A complaint attacked by a Rule 12(b)(6) motion to dismiss will survive if it contains enough facts to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

In <u>Iqbal</u>, the Supreme Court articulated a two-step process for determining whether a complaint meets this plausibility standard. <u>Id.</u> at 678-79. First, the court identifies allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. <u>Id.</u> at 679; <u>see also</u> <u>Anand v. Ocwen Loan Serv., LLC</u>, 754 F.3d 195, 198 (4th Cir. 2014) (recognizing the court does not accept as true legal conclusions couched as a factual allegations). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." <u>Iqbal</u>, 556 U.S. at 678 (citing <u>Twombly</u>, 550 U.S. at 555). Although the pleading requirements stated in Rule 8 of the Federal Rules of Civil Procedure mark "a notable and generous departure from the hyper-technical, code-pleading regime of a prior era . . . it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." <u>Id.</u> at 678-79.

Second, to the extent there are well-pleaded factual allegations, the court assumes their truth and then determines whether they plausibly give rise to an entitlement to relief. <u>Id.</u> "Determining whether a complaint contains sufficient facts to state a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." <u>Id.</u> at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not 'show[n]'– 'that the pleader is entitled to relief,'" and therefore should be dismissed. <u>Id.</u> (quoting Fed. R. Civ. P. 8(a)(2)).

The sufficiency of the factual allegations aside, "Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law." <u>Neitzke v. Williams</u>, 490 U.S. 319, 326 (1989). Indeed, where "it is clear that no relief could be granted under any set of facts that could be prove[n] consistent with the allegations . . . a claim must be dismissed." <u>Id.</u> at 327 (quoting <u>Hishon v. King & Spalding</u>, 467 U.S. 69, 73 (1984)).

## III.   DISCUSSION

As an initial matter, the Individual Defendants argue that all claims against them should be dismissed because Plaintiff improperly grouped the Individual Defendants together but failed to plausibly allege facts to support the claims.  The Individual Defendants argue Plaintiff failed to identify any individual CMPD officer that caused Plaintiff's injuries.  However, Plaintiff's Complaint alleges that the events leading to his injury occurred at night, that officers were dressed in riot gear without their badges displayed, and that Plaintiff was not directly near the police but that he observed one of the Individual Defendants standing 50 feet away from him throw the device that landed directly at his feet.  (Doc. No. 27 ¶¶ 54, 94-98).  It further alleges that, upon information and belief, one of the Individual Officer Defendants used flash bang and stinger grenades on peaceful protestors on May 30, 2020, and deployed the device that caused Plaintiff's injuries.  Id. ¶ 38.  At this early stage of the litigation, considering the Rule 12(b)(6) standard, Plaintiff has alleged sufficient facts to plausibly state claims against the Individual Defendants.  "[A] plaintiff need only submit facts sufficient to plead a plausible claim for relief.  Indeed, it is the purpose of discovery to establish the presence or absence of facts with which the plaintiff intends to *prove* his claim."  Burgess v. Balt. Police Dep't, No. RDB-15-0834, 2016 WL 795975, at *10 (D. Md. Mar. 1, 2016) (emphasis in original); J.A. v. Miranda, No. PX 16-3953, 2017 WL 3840026, at *3-4 (D. Md. Sept. 1, 2017) ("[T]hat the complaint does not specify by name those officers who specifically kicked J.A. in the face or put a bag over his head is hardly fatal. J.A., as the person experiencing the beating, would not plausibly be able to identify the officers with particularity. But at the same time, those officers at the scene are identified, thus placing them on sufficient notice of the claims and the nature of the alleged jointly undertaken group misconduct.").

Indeed, the only cases that the Individual Defendants cite in support of this argument involve heightened pleading standards such as where plaintiffs used group pleading in a fraud case which requires heighted pleading under Rule 9(b).  In re First Union Corp. Secs. Litig., 128 F. Supp. 2d 871, 888 (W.D.N.C. Jan. 10, 2001).  Further, Defendants opposed Plaintiff's request for early discovery to assist in identifying who threw the device that injured Plaintiff, and Defendants cannot have it both ways.  (Doc. No. 32).  Plaintiff has provided a plausible inference that each of the officers could have thrown the device that injured him, and Defendants' argument fails.  See Poole v. City of Lincoln, No. 4:21CV3030, 2021 WL 2935899, at *4-5 (D. Ne. July 13, 2021) (rejecting similar argument where drawing from allegations in the complaint defendant may be able to ascertain which of the officers involved in incidents at issue injured plaintiff concluding "at this early stage of the lawsuit, before Plaintiffs have been afforded an opportunity to serve discovery, their claims will not be dismissed under Rule 12(b)(6)").

### A.  Section 1983 Claims

Under 42 U.S.C. § 1983,

> [e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.  Thus, "[t]o state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law."  Mauler v. Arlotto, 777 Fed. App'x 59, 60 (4th Cir. 2019) (per curiam).

However, "[w]hen a government official is sued in their individual capacity, qualified immunity protects them 'insofar as their conduct does not violate clearly established statutory or

constitutional rights of which a reasonable person would have known.'" Sharpe v. Winterville Police Dep't, 59 F.4th 674, 682-83 (4th Cir. 2023) (quoting Pearson v. Callahan, 555 U.S. 223, 231 (2009)). Thus, "[a]n officer is entitled to qualified immunity unless he (1) 'violated a federal statutory or constitutional right, and (2) the unlawfulness of [his] conduct was clearly established at the time.'" Hulbert v. Pope, 70 F.4th 726, 732 (4th Cir. 2023) (quoting District of Columbia v. Wesby, 138 S. Ct. 577, 589 (2018)). "A right can be clearly established by cases of controlling authority in this jurisdiction or by a consensus of persuasive authority from other jurisdictions." Sharpe, 59 F.4th at 683 (citing Owens ex rel. Owens v. Lott, 372 F.3d 267, 280 (4th Cir. 2004)). "Either way, these sources 'must have placed the statutory or constitutional question beyond debate.'" Id. (quoting Kisela v. Hughes, 138 S. Ct. 1148, 1152 (2018)). The right must be "'sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" Id. (quoting Cannon v. Vill. of Bald Head Island, 891 F.3d 489, 497 (4th Cir. 2018)). In considering qualified immunity, "the nature of the right allegedly violated must be defined at a high level of particularity." Occupy Columbia v. Haley, 738 F.3d 107, 121 (4th Cir. 2013) (quoting Rogers v. Pendleton, 249 F.3d 279, 286 (4th Cir. 2001)) (internal quotation marks omitted).

"A qualified immunity defense can be presented in a Rule 12(b)(6) motion, but . . . when asserted at this early stage in the proceedings, 'the defense faces a formidable hurdle' and 'is usually not successful'" because at this stage plaintiff need only state a claim that is plausible on its face. Owens v. Balt. City State's Att'y Office, 767 F.3d 379, 396 (4th Cir. 2014) (quoting Field Day, LLC v. Cnty. of Suffolk, 463 F.3d 167, 191–92 (2d Cir.2006)).

## 1. Section 1983 First Amendment Claim

First, Plaintiff brings a § 1983 claiming Defendants violated his First Amendment rights. "[A] bedrock First Amendment principle is that citizens have a right to voice dissent from

government policies" and "speech regarding 'matters of public concern is at the heart of the First Amendment's protection.'" Occupy Columbia, 738 F.3d at 122 (quoting Tobey v. Jones, 706 F.3d 379, 391 (4th Cir. 2013) and Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc., 472 U.S. 749, 758–59 (1985)) (alterations in original omitted). "Speech deals with matters of public concern when it can be fairly considered as relating to any matter of political, social, or other concern to the community." Id. (quoting Snyder v. Phelps, 562 U.S. 443, 453 (2011)) (internal quotation marks omitted). "It is also true that 'public places' historically associated with the free exercise of expressive activities, such as streets, sidewalks, and parks, are considered, without more, to be 'public forums.'" Id. at 121. "[P]rotected speech is not equally permissible in all places at all times" and "the state may 'enforce regulations of the time, place, and manner of expression which are content-neutral, are narrowly tailored to serve a significant government interest, and leave open ample alternative channels of communication.'" Id. (quoting Cornelius v. NAACP Legal Def. & Educ. Fund, Inc., 473 U.S. 788, 799 (1985) and Perry Educ. Ass'n v. Perry Local Educators' Ass'n, 460 U.S. 37, 45 (1983)). For example, where demonstrations turn violent, they may lose their protected status. Grayned v. City of Rockford, 408 U.S. 104, 116 (1972); Parcham v. Immigr. & Nat. Serv., 769 F.2d 1001, 1005 (4th Cir. 1985).

In addition, the First Amendment protects "the right to be free from retaliation by a public official for the exercise of that right." Constantine v. Rectors & Visitors of George Mason Univ., 411 F.3d 474, 500 (4th Cir. 2005) (quoting Suarez Corp. Indus. v. McGraw, 202 F.3d 676, 685 (4th Cir.2000)) (internal quotation marks omitted). "A plaintiff seeking to recover for First Amendment retaliation must allege that (1) [he] engaged in protected First Amendment activity, (2) the defendants took some action that adversely affected [his] First Amendment rights, and (3) there was a causal relationship between [his] protected activity and the defendants' conduct." Id.

(citing <u>Suarez Corp. Indus.</u>, 202 F.3d at 686).  An adverse action is one that "would likely deter 'a person of ordinary firmness' from the exercise of First Amendment rights."  <u>Constantine</u>, 411 F.3d at 500 (quoting <u>Washington v. Cnty. of Rockland</u>, 373 F.3d 310, 320 (2d Cir. 2004)).  To show a causal relationship the plaintiff must show at least that the defendant was aware of the plaintiff engaging in protected activity and a degree of temporal proximity between alleged retaliation and the protected activity.  <u>Id.</u>

Here, Plaintiff plausibly pleads that he was engaged in protected First Amendment activity when he participated in protests on public sidewalks and streets to protest police violence.  The Individual Defendants argue that they are entitled to qualified immunity on Plaintiff's § 1983 claim for First Amendment violations because Plaintiff's Complaint alleges instances of violence and a "tense and evolving situation on May 30, 2020" meeting the definition of a riot under North Carolina law such that any of the Individual Defendants were objectively reasonable in using crowd control techniques on the crowd as a unit.  (Doc. No. 31-1 at 12-13).

While Individual Defendants' argument may have merit, it is premature at this Rule 12(b)(6) stage.  Defendants point to certain facts in the Complaint which allege there were instances of anger, aggression, and damage to property by demonstrators.  However, the Complaint also alleges that those instances were rare, were done by individuals who could have been singled out for removal from the protest, and that "no incident occurred justifying CMPD to character the protests as an unlawful assembly or to use widespread, indiscriminate force against the crowd of demonstrators."  (Doc. No. 27 ¶ 70).  Moreover, the Complaint alleges that at the time the device was allegedly thrown near Plaintiff's feet, it was thrown in an area that contained peaceful protestors and bystanders, and "never having engaged in any activity that could be considered violent."  <u>Id.</u> ¶ 94.  Considering the Rule 12(b)(6) standard, taking all allegations in the Complaint

as true, factual questions remain as to the events on May 30, 2020, and additional factual development is needed before the Court can rule. Allen v. City of Graham, Nos. 1:20-CV-997, 1:20-CV-998, 2021 WL 2223772, at *9 (M.D.N.C. June 2, 2021) ("[T]he County defendants rely on a selective recitation of only some of the facts alleged and ignore allegations that disrupt their narrative. The plaintiffs allege that the demonstration was peaceful and that the defendants used force to prevent the plaintiffs from protesting. The defendants' factual assertion that their acts were needed to 'stop an unlawful assembly' and to 'clear the streets,' are more appropriately raised at summary judgment." (internal citations and alternations omitted)).

The cases to which Individual Defendants point further demonstrate why at this early-stage dismissal is inappropriate based on the facts pled in the Complaint. For example, in Washington Mobilization Committee v. Cullinane, the court of appeal, among other things, reversed a trial court's conclusion that restrictions imposed by police officers during certain demonstrations violated the First Amendment where the restrictions resulted in arrests of bystanders and demonstrators that were not guilty of violence or obstruction. 566 F.2d 107, 120 (D.C. Cir. 1977). In reversing the trial court, the court of appeals concluded that that "because either obstructive conduct or actual or imminent violence infected the demonstrations in *substantial measure*," the police officers did not violate the First Amendment. Id. (emphasis added). In reaching this conclusion, the court reasoned:

> It is the tenor of the demonstration as a whole that determines whether the police may intervene; and if it is *substantially infected* with violence or obstruction the police may act to control it as a unit. Where demonstrations turn violent, they lose their protected quality as expression under the First Amendment. Confronted with a mob the police cannot be expected to single out individuals; they may deal with the crowd as a unit.
>
> We do not suggest of course that one who has violated no law may be arrested for the offenses of those who have been violent or obstructive. As we have seen however the police may validly order violent or obstructive demonstrators to

> disperse or clear the streets. If any demonstrator or bystander refuses to obey such an order after fair notice and opportunity to comply, his arrest does not violate the Constitution even though he has not previously been violent or obstructive.

Id. (internal citations, quotations and alterations omitted) (emphasis added). Importantly, in reaching this conclusion the court had the benefit of findings after a trial. Id.

For these reasons, the undersigned respectfully recommends that Defendants' Motion to Dismiss Plaintiff's § 1983 claim for First Amendment violations be denied. To be clear, the undersigned is not reaching the merits of Plaintiff's First Amendment claim or concluding that the Individual Defendants are not entitled to qualified immunity on Plaintiff's claim. Rather, the undersigned concludes that at this stage, and considering the Rule 12(b)(6) standard, Plaintiff has stated a claim for relief and additional factual development is needed to determine whether the Individual Defendants are entitled to qualified immunity on Plaintiff's First Amendment claim. See Occupy Columbia, 738 F.3d at 123.

## 2. Section 1983 Fourth Amendment Claim

Next, Plaintiff brings a claim under § 1983 alleging violations of the Fourth Amendment. The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. CONST. amend. IV. Here, Plaintiff claims an unreasonable seizure of a person – the Plaintiff. A person can be seized by (1) physical force, or (2) a show of authority that in some way restrains the liberty of the person. Torres v. Madrid, 592 U.S. 306, 311 (2021) (quoting Terry v. Ohio, 392 U.S. 1, 19, n.16 (1968)). These two types of seizures, by force and by control, are distinct. Id. at 322.

A seizure by control requires "[1] voluntary submission to a show of authority or [2] the termination of freedom of movement." Id. Seizure by voluntary submission to a show of authority occurs if "in view of all the circumstances surrounding the incident, a reasonable person would

have believed that he was not free to leave" and voluntarily complies. <u>California v. Hodari D.</u>, 499 U.S. 621, 627-29 (1991). A seizure by termination of freedom of a person's movement occurs when there is a "governmentally caused termination of an individual's freedom of movement" but only when it is "through means intentionally applied." <u>Brower v. Cnty. of Inyo</u>, 489 U.S. 593, 596-97 (1989).

On the other hand, the "requirement of control or submission never extended to seizures by force." <u>Torres</u>, 592 U.S. at 322. "[N]ot every physical contact between a government employee and a member of the public [is] a Fourth Amendment seizure." <u>Id.</u> at 317. A seizure by force "requires the use of force *with intent to restrain*." <u>Id.</u> (citing <u>Cnty. of Sacramento v. Lewis,</u> 523 U.S. 833, 844 (1998) (emphasis added). "Accidental force will not qualify" nor "will force intentionally applied for some other purpose" than to restrain. <u>Id.</u> In determining whether a seizure occurred, courts do not consider an officer's subjective intent nor the subjective perceptions of the seized person. <u>Id.</u> Rather, the appropriate inquiry "is whether the challenged conduct *objectively manifests an intent to restrain*." <u>Id.</u> (emphasis added).

Defendants argue that Plaintiff's Complaint fails to plausibly allege that he was seized under the Fourth Amendment. The Court agrees. As relevant here, Plaintiff's Complaint alleges that at approximately 9:13 p.m., Plaintiff "witnessed police filing out of a parking lot next to the Spectrum Center and shoving multiple protestors to the ground. Due to this unwarranted display of force, the demonstration broke into smaller groups and began to disintegrate." (Doc. No. 27 ¶ 92). Plaintiff claims the police deployed rubber and pepper ball bullets, flashbangs, and chemical weapons, and began to corral protestors towards a local hotel. <u>Id.</u> Plaintiff alleges officers shot protesters with projectiles at close range without warnings, injuring numerous people. <u>Id.</u> Plaintiff was fired upon and struck by pepper ball guns and forced to run through clouds of CS/OC gas."

Id.  In addition, at around 11:30 p.m., "Defendants 'kettled' peaceful protestors. [Plaintiff] was not directly near the police, and many people in the area were not participating in the protest."  Id. ¶ 93.  Plaintiff then alleges Defendants "without notice or instruction to disperse, deployed tear gas, pepper bullets, and flashbang grenades in an area that contained not only peaceful protestors but bystanders."  Id. ¶ 94.  Plaintiff "observed a police officer standing 50 feet away throw a device that landed directly at his feet" which Plaintiff picked up and the device exploded in his hand causing injuries.  Id. ¶ 95.  Plaintiff was not arrested or charged with a crime.  Id. ¶¶ 87, 175-176.

Considering these facts, Plaintiff's Complaint fails to allege either a seizure (1) by control through voluntary submission to a show of authority; or (2) by force within the meaning of the Fourth Amendment.  Plaintiff's Complaint states that while officers allegedly 'kettled' peaceful protestors, Plaintiff was not directly near the police at that time and that, through the use of the devices, the demonstration began to break into to smaller groups and disintegrate.  Id. ¶¶ 92, 94-95.  Taking the facts in the Complaint as true, Plaintiff's Complaint alleges that Defendants actions were aimed at *dispersing* the crowds.  Id. ¶¶ 72, 94, 159.  Given that Plaintiff alleged this was a protest, a reasonable person would have believed that Plaintiff was free to leave.  In addition, there is no factual allegations that suggest Plaintiff "submitted" to law enforcement on May 30, 2020.  Plaintiff's Complaint also fails to allege a seizure by force within the meaning of the Fourth Amendment because it does not plausibly allege facts surrounding the incidents that Defendants exerted excessive force with an intent to restrain Plaintiff or that they ever intended or attempted to arrest or otherwise restrain him.  Rather, as noted, the Complaint alleges, the devices to which Plaintiff was subject to on May 30, 2020, were used to disperse crowds.  Id. ¶¶ 72, 94, 159.

Plaintiff appears to argue that he was seized under the Fourth Amendment by control through the termination of his freedom of movement.  To support his position that a seizure

occurred, Plaintiff cites to <u>Nelson v. Davis</u>, 685 F.3d 867 (9th Cir. 2012). In <u>Nelson</u>, the Ninth Circuit concluded that a seizure occurred where a police officer intentionally threw a device in the direction of a group including the plaintiff and it struck the plaintiff in the eye, rendering him immobile. <u>Id.</u> at 875-76. The court reasoned, a seizure occurred because "plaintiff was both an object of intentional governmental force and his freedom of movement was limited as a result." <u>Id.</u> at 876. <u>Nelson</u>, however, it not binding law in this Circuit, and unlike in <u>Nelson</u>, Plaintiff's Complaint does not allege that he was rendered immobile, restrained, or that he otherwise lost his freedom of movement by Defendants.[6] Nor does the Complaint contain facts indicating that Defendants objectively manifested an intent to restrict Plaintiff rather than disperse protestors.

Similarly, Plaintiff cites to <u>Henry v. Purnell</u>, to support his position that he was seized. In <u>Henry</u>, the Fourth Circuit held the plaintiff was seized where he was shot in the elbow while fleeing law enforcement. 501 F.3d 374 (4th Cir. 2007). However, after being shot, the plaintiff "stopped running and was arrested." <u>Id.</u> at 379. As explained, this case is inapposite because Plaintiff conceded he was not arrested.

Alternatively, and in addition, even if Plaintiff's Complaint does sufficiently allege that a seizure under the Fourth Amendment occurred, Individual Defendants are entitled to qualified immunity because Plaintiff has not alleged a violation of a clearly established right. Here, the issue is whether a reasonable officer would have understood that Plaintiff was being seized within the meaning of the Fourth Amendment. Whether a seizure under the Fourth Amendment occurs when officers use non-lethal force to disperse a crowd of protestors rather than to restrain a person was not clearly established in May 2020. The Parties do not cite to caselaw from the Supreme

---

[6] To the extent Plaintiff urges the Court to conclude that certain allegations related to his injury would make him immobile or cause him to lose his freedom of movement, the Court does not find he has sufficiently pled such allegations in his Complaint. (Doc. No. 27 ¶¶ 7, 212-213).

Court or the Fourth Circuit addressing this specific legal issue or similar cases placing this legal issue "beyond debate." Sharpe, 59 F.4th at 683. Indeed, in May 2020, the Supreme Court had not issued its decision in Torres, as to whether the use of force *with intent to restrain* but without subduing the person constitutes a seizure under the Fourth Amendment. Torres, 592 U.S. 306. While some courts had addressed the issue of whether a seizure occurs when force is used to disperse a crowd or not otherwise restrain a person, there certainly was not a consensus of persuasive authority from other jurisdictions. Nelson, 685 F.3d 867; Sharpe, 59 F.4th at 683.

Accordingly, the undersigned recommends that Defendants' Motion to Dismiss Plaintiff's § 1983 for Fourth Amendment violations be granted because Plaintiff's Complaint fails to allege a seizure occurred under the Fourth Amendment. In any event, Individual Defendants have qualified immunity since there was not a clearly established Fourth Amendment right on May 30, 2020. See Quraishi v. St. Charles Cnty., Mo., 986 F.3d 831, 839-40 (8th Cir. 2021) (concluding that officer was entitled to qualified immunity because it was not clearly established that deploying tear gas was a seizure under the Fourth Amendment where it did not restrict freedom of movement); Keup v. Sarpy Cnty., No. 8:21-CV-312, 2023 WL 8829298, at *17-18 (D. Neb. Dec. 21, 2023) (concluding officer had qualified immunity on Fourth Amendment claim for use of pepper ball because it was not clearly established at the time of the alleged conduct that use of force to disperse rather than to apprehend constituted a seizure); Ferris v. District of Columbia, No. 1:23-cv-481-RCL, 2023 WL 8697854, at *8-12 (D.D.C. Dec. 15, 2023) (dismissing Fourth Amendment claim because plaintiff failed to allege a Fourth Amendment seizure where officers intended to expel protestors from particular areas rather than restrain and officers had qualified immunity because it was not clearly established that attempting to disperse a crowd rather than restrain constituted a seizure); Ratlieff v. City of Fort Lauderdale, No. 22-CV-61029-RAR, 2023

WL 3750581, at *7 (S.D. Fla. June 1, 2023) (dismissing § 1983 Fourth Amendment claim because plaintiff failed to allege a seizure where officers use of force intended to disperse crowds of peaceful demonstrators and officer did not objectively manifest an intent to restrict plaintiff's freedom of movement); Black Lives Matter D.C. v. Trump, 544 F. Supp. 3d 15, 48-49 (D.D.C. 2021) (concluding officers had qualified immunity of Fourth Amendment claims because plaintiffs failed to point to violation of any clearly established Fourth Amendment right where officers used tear gas to move members of a crowd rather than restrain them); Dundon v. Kirchmeier, 577 F. Supp. 3d 1007, 1039-40 (D.N.D. 2021) (concluding no seizure occurred where officers used force to disperse protestors rather than restrain protestors, and also that the law was not clearly established that the officers' actions constituted a seizure).

### 3. Section 1983 Claim Against the City of Charlotte Under Monell

"Municipalities are 'persons' within the meaning of § 1983." Franklin v. City of Charlotte, 64 F.4th 519, 535 (4th Cir. 2023) (quoting Monell v. Dep't of Soc. Servs. of N.Y.C., 436 U.S. 658, 690 (1978)). Thus, a suit may be brought against a municipality for a federal constitutional deprivation "when the municipality undertook the allegedly unconstitutional action pursuant to an 'official policy' or 'custom.'" Starbuck v. Williamsburg James Cnty. Sch. Bd., 28 F.4th 529, 532-33 (4th Cir. 2022) (quoting Monell, 436 U.S. at 690-91). Monell liability under § 1983 cannot be predicated upon a respondeat superior theory. Franklin, 64 F.4th at 535. "Liability arises only when the offensive acts are taken in furtherance of municipal policy or custom." Jones v. McComas, No. 1:23-cv-215-KDB, 2023 WL 7174240, at *2 (W.D.N.C. Oct. 31, 2023).

There are three elements for Monell liability. Id. "First, the plaintiff must plausibly allege a constitutional harm that stems from the acts of a municipal employee 'taken in furtherance of some municipal policy or custom.'" Id. (quoting Milligan v. City of Newport News, 743 F.2d 227,

229 (4th Cir. 1984)).  "Second, the plaintiff must allege facts showing that the policy's creation is

fairly attributable to the municipality."  Jones, 2023 WL 7174240, at *2; Spell v. McDaniel, 824

F.2d 1380, 1389 (4th Cir. 1987).  "Third, the plaintiff must allege an affirmative causal link

between the policy or custom, and the particular injury suffered by the plaintiff."  Jones, 2023 WL

7174240, at *2; Franklin, 64 F.4th at 536-37.

> With respect to the first element,

> [A] policy or custom for which a municipality may be held liable can arise in four
> ways: (1) through an express policy, such as a written ordinance or regulation; (2)
> through the decisions of a person with final policymaking authority; (3) through an
> omission, such as a failure to properly train officers, that 'manifest[s] deliberate
> indifference to the rights of citizens'; or (4) through a practice that is so 'persistent
> and widespread' as to constitute a 'custom or usage with the force of law.'

Starbuck, 28 F.4th at 533 (quoting Lytle v. Doyle, 326 F.3d 463, 471 (4th Cir. 2003)).

Where a plaintiff alleges a municipal policy or custom by failure to train, the plaintiff must

show that "(1) the subordinates actually violated the plaintiff's constitutional or statutory rights;

(2) the supervisor failed to train properly the subordinates thus illustrating a 'deliberate

indifference' to the rights of the persons with whom the subordinates come into contact; and (3)

this failure to train actually caused the subordinates to violate the plaintiff's rights."  Caraway v.

City of Pineville, No.3:21-cv-00454, 2022 WL 16700687, at *15 (W.D.N.C. Nov. 3, 2022)

(quoting Gallimore v. Henrico Cnty. Sch. Bd., 38 F. Supp. 3d 721, 726 (E.D. Va. Aug. 5, 2014)).

Deliberate indifference "is a stringent standard of fault, requiring proof that a municipal actor

disregarded a known or obvious consequence of his action."  Connick v. Thompson, 563 U.S. 51,

61 (2011) (quoting Bd. Of Cnty. Comm'rs of Bryan Cnty Okla. v. Brown, 520 U.S. 397, 410

(1997)).  "[W]hen city policymakers are on actual or constructive notice that a particular omission

in their training program causes city employees to violate citizens' constitutional rights, the city

may be deemed deliberately indifferent if the policymakers choose to retain that program."  Id. at

61-62; <u>Spell</u>, 824 F.2d at 1390 ("[T]raining policy deficiencies for which municipal liability may be imposed include not only express authorizations of specific unconstitutional conduct, but tacit authorizations, and failures adequately to prohibit or discourage readily foreseeable conduct in light of known exigencies of police duty.").

Where a plaintiff alleges a municipal policy through persistent and widespread custom or usage, the plaintiff may also show such custom or usage by condonation if the plaintiff demonstrates "(1) actual or constructive knowledge of its existence by responsible policymakers, and (2) their failure, as a matter of specific intent or deliberate indifference, thereafter to correct or stop the practices." <u>Spell</u>, 824 F.2d at 1391. "Constructive knowledge may be inferred from the widespread extent of the practices, general knowledge of their existence, manifest opportunities and official duty of responsible policymakers to be informed, or combinations of these." <u>Id.</u> "The inculpating knowledge, whether actual or constructive, may be either that of the municipal governing body itself, or of municipal officials having final policymaking authority in municipal law enforcement matters." <u>Id.</u>

"No matter which of these paths [to show a policy or custom that] a plaintiff takes, the 'official policy' itself must 'inflict' the alleged injury for the municipality to be liable under § 1983." <u>Franklin</u>, 64 F.4th at 536 (quoting <u>Monell</u>, 436 U.S. at 694) (alterations in original omitted). Where there is no constitutional violation by an individual officer there can be no municipality liability under § 1983. <u>City of Los Angeles v. Heller</u>, 475 U.S. 796, 799 (1986) ("If a person has suffered no constitutional injury at the hands of the individual police officer, the fact that the departmental regulations might have authorized the use of constitutionally excessive force is quite beside the point."); <u>Ryu v. Whitten</u>, 684 Fed. App'x 308, 311 (4th Cir. 2017) ("Accordingly, because there was no Fourth Amendment violation, both Ryu's Fourth Amendment

claim against Whitten in his individual capacity and his <u>Monell</u> claim against Warren County fail.").

Here, as discussed above, the undersigned concludes that Plaintiff's Complaint fails to sufficiently allege that his Fourth Amendment rights were violated. Therefore, because Plaintiff's Complaint does not sufficiently allege a Fourth Amendment violation by any Individual Defendant, Plaintiff's claim against the City for Fourth Amendment violations must be dismissed.

On the other hand, at this Rule 12(b)(6) stage, Plaintiff's Complaint has sufficiently pled a claim against the City with respect to Plaintiff's alleged First Amendment violations. Among other things, Plaintiff's Complaint alleges that crowd management and crowd control policies, training, strategies, and tactics of the CMPD on May 30, 2020, "were woefully deficient as compared to nationally accepted police standards and practices." (Doc. No. 27 ¶ 129). For example, the Complaint alleges "CMPD's policies and training placed undue emphasis on militaristic crowd control strategies — such as intimidation, platoon movements, and displays of force. The CMPD also trained its police officers to use force indiscriminately on crowds, as opposed to using tactics to isolate, lawfully remove and arrest individual 'bad actors' who damaged property or posed a threat to safety." <u>Id.</u> It alleges that "[c]onsistent with their outdated and inadequate training, CMPD officers on May 30, 2020 created confusion and chaos through overuse of chemical weapons on large crowds of peaceful demonstrators, with no attempt to ascertain or isolate any individuals who posed a threat of harm." <u>Id.</u> ¶ 131. Further, Plaintiff's Complaint alleges that in 2016, widespread protests occurred in Charlotte also protesting police violence, during which "CMPD indiscriminately used force, including chemical munitions in response and in an effort to abridge, retaliate and punish protestors for criticizing the police." <u>Id.</u> ¶ 143. "[T]here was a public outcry over the use of chemical munitions and explosive devices (including stinger flash grenades)

by the CMPD against peaceful protesters" and new City officials were elected "to address police violence in the community, including CMPD's unlawful use of chemical and 'less lethal' weapons during those protests." Id. ¶ 144.

After prior protests in 2016, the City allegedly paid the Police Foundation to consult with the City "regarding use of force" and how police responded to street protests. Id. ¶ 105. The Police Foundation report indicated the need for additional training in areas relating to responding to protests. Id. ¶¶ 105-115. Plaintiff claims this put the City on notice of "the need to overhaul its approach to crowd management and control during demonstrations of free speech, particularly protests aimed at systemic police violence," but despite this CMPD "escalated their unlawful and wanton use of those chemical weapons and munitions against peaceful protestors, including Plaintiff" in 2020. Id. ¶ 146.

Considering these facts, and the Rule 12(b)(6) standard the undersigned is tasked with applying at this stage, Plaintiff has alleged sufficient facts to support its claim against the City, including that an official policy or custom attributable to the City existed which caused the claimed violation of Plaintiff's First Amendment rights.[7]

For these reasons, the undersigned respectfully recommends that Defendants' Motion to Dismiss Plaintiff's § 1983 claim against the City for alleged Fourth Amendment violations be granted and that Defendants' Motion to Dismiss Plaintiff's § 1983 claim against the City for

---

[7] However, the Court notes that to the extent Plaintiff argues that the City is liable under § 1983 by ratifying officers' actions by allegedly failing to investigate, discipline, or train officers after Plaintiff's injuries occurred on May 30, 2020, such theories of liability fail. (Doc. No. 27 ¶¶ 100-103). Plaintiff cannot demonstrate a causal link between post-facto actions which could not have caused the alleged constitutional violations that occurred on May 30, 2020. See Franklin, 64 F.4th at 536-37 (concluding city was not liable under § 1983 for officer's shooting of plaintiff where final policymaker's "post-facto approval of an internal shooting investigation cannot possibly have caused the constitutional violation" and reversing the decision "cannot undo what is done.").

alleged First Amendment violations be <u>denied</u>.[8]

### 4. <u>Section 1983 Supervisor Liability</u>

"[S]upervisory officials may be held liable in certain circumstances for the constitutional injuries inflicted by their subordinates." <u>Shaw v. Stroud</u>, 13 F.3d 791, 798-99 (4th Cir. 1994). Such liability is not based on the principles of <u>respondeat</u> <u>superior</u> but on "'a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care.'" <u>Id.</u> (quoting <u>Slakan v. Porter</u>, 737 F.2d 368, 372-73 (4th Cir.1984)). Supervisors may be held liable under § 1983 if a plaintiff shows:

> (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed 'a pervasive and unreasonable risk' of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show 'deliberate indifference to or tacit authorization of the alleged offensive practices,'; and (3) that there was an 'affirmative causal link' between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

<u>Id.</u> (citing <u>Miltier v. Beorn</u>, 896 F.2d 848, 854 (4th Cir.1990); <u>Slakan</u>, 737 F.2d at 373; <u>Wellington v. Daniels</u>, 717 F.2d 932, 936 (4th Cir.1983)).

Because the undersigned concludes Plaintiff's Complaint fails to sufficiently allege that his Fourth Amendment rights were violated, the supervisor liability with respect to the alleged Fourth Amendment violations must be dismissed. However, Plaintiff's Complaint alleges facts sufficient to state a claim for supervisory liability under § 1983 for claimed First Amendment

---

[8] Because Plaintiff has alleged claims against certain Individual Defendants in their official and individual capacities and has named the City as a defendant, Plaintiff's official capacity claims are redundant. Plaintiff concedes that the official capacity claims are redundant of his parallel claims against the City, and does not oppose dismissal of these claims. Accordingly, the undersigned recommends <u>granting</u> Defendants' Motion to Dismiss the official capacity claims. <u>See</u> <u>Ridpath v. Bd. of Governors Marshall Univ.</u>, 447 F.3d 292, 307 n.13 (4th Cir. 2006).

violations. At this stage, considering the Rule 12(b)(6) standard, Plaintiff has sufficiently pled that the Individual Supervisory Defendants had knowledge that the officers on May 30, 2020, were using various non-lethal devices that posed "a pervasive and unreasonable risk" of constitutional injury to citizens, that the Individual Supervisory Defendants' did not respond to or directed and approved such use, and a causal link between such inaction or approval and Plaintiff's injuries. (Doc. No. 27 ¶¶ 39, 57-60, 62, 98, 199).

For these reasons, the undersigned respectfully recommends that Defendants' Motion to Dismiss Plaintiff's § 1983 claim against the Individual Supervisory Defendants for alleged Fourth Amendment violations be granted and that Defendants' Motion to Dismiss Plaintiff's § 1983 claim against the Individual Supervisory Defendants for alleged First Amendment violations be denied.

### 5. Section 1983 Civil Conspiracy Claim

To state a civil conspiracy claim under § 1983, a plaintiff must show that the defendants acted "jointly in concert and that some overt act was done in furtherance of the conspiracy which resulted in [the plaintiff's] deprivation of a constitutional right." Hinkle v. City of Clarksburg, W.V., 81 F.3d 416, 421 (4th Cir. 1996) (citing Hafner v. Brown, 983 F.2d 570, 577 (4th Cir. 1992)). To prove a civil conspiracy claim, a plaintiff "need not produce direct evidence of a meeting of the minds, [but] must come forward with specific circumstantial evidence that each member of the alleged conspiracy shared the same conspiratorial objective." Id. In other words, a plaintiff must come forward with evidence that "reasonably lead[s] to the inference that [defendants] positively or tacitly came to a mutual understanding to try to accomplish a common and unlawful plan." Id.

"The intracorporate conspiracy doctrine recognizes that a corporation cannot conspire with its agents because the agents' acts are the corporation's own." Painter's Mill Grille, LLC v. Brown,

716 F.3d 342, 352–53 (4th Cir. 2013). "The doctrine is applicable to municipalities." Fox v. City of Greensboro, 807 F. Supp. 2d 476, 499 (M.D.N.C. 2011). "Moreover, merely suing the officers, employees, or agents in their individual capacities does not change the result." Id. (citing Buschi v. Kirven, 775 F.2d 1240, 1252 (4th Cir. 1985)). There are two exceptions to the intracorporate doctrine. Painter's Mill Grille, LLC, 716 F.3d at 352–53. "First, it is generally inapplicable where a co-conspirator possesses a personal stake independent of his relationship to the corporation." Id. (internal quotation marks omitted). "Second, a plaintiff may state a conspiracy claim where the agent's acts were not authorized by the corporation." Id. (citing Buschi, 775 F.2d at 1252–53).

Here, to the extent Plaintiff claims a civil conspiracy among the City and the Individual Defendants acting in the scope of their employment, the intracorporate conspiracy doctrine applies. Painter's Mill Grille, 716 F.3d at 352–53; Fox, 807 F. Supp. 2d at 499. Also, Plaintiff's Complaint fails to allege any facts to support a mutual understanding between Defendants and others that reasonably leads to the inference that they mutually agreed to deprive protestors like Plaintiff of his constitutional rights. Rather, Plaintiff points to a mutual aid agreement, an agreement among governmental entities to provide support in the form of personnel and otherwise in certain instances. (Doc. No. 27 ¶¶ 247-255). But simply offering to provide personnel and support, and having meetings with respect to such agreement, is not commensurate with Defendants and others conspiring to violate Plaintiff's constitutional rights. As a result, Plaintiff's Complaint is wholly insufficient to state a claim that there was a conspiracy to deprive Plaintiff of his constitutional rights.

Accordingly, the undersigned respectfully recommends granting Defendants' Motion to Dismiss Plaintiff's § 1983 conspiracy claim.

### B. State Law Claims

Public official immunity "precludes suit against public officials in their individual capacities and protects them from liability 'as long as a public officer lawfully exercises the judgment and discretion with which he is invested by virtue of his office, keeps within the scope of his official authority, and acts without malice or corruption.'" R.A. v Johnson, 36 F.4th 537, 542 (4th Cir. 2022) (quoting Hart v. Brienza, 784 S.E.2d 211, 215 (N.C. Ct. App. 2016)); see also Mitchell v. Pruden, 796 S.E.2d 77, 82 (quoting Fullwood v. Barnes, 792 S.E.2d 545, 550 (N.C. Ct. App. 2016)). "North Carolina courts have found police officers engaged in performance of their duties are public officials entitled to public official immunity." Morgan v. City of Charlotte, No. 3:22-CV-00003-KDB-DCK, 2023 WL 4002524, at * (W.D.N.C. June 14, 2023) (citing Campbell v. Anderson, 576 S.E.2d 726, 729-30 (N.C. Ct. App. 2003)). To sufficiently state a claim in cases where immunity presumptively applies, the plaintiff must adequately plead one of these exceptions in the complaint. R.A., 36 F.4th at 544.

A "defendant acts with malice when he wantonly does that which a man of reasonable intelligence would know to be contrary to his duty and which he intends to be prejudicial or injurious to another." Grad v. Kaasa, 321 S.E.2d 888, 890 (N.C. 1984). "Thus elementally, a malicious act is an act (1) done wantonly, (2) contrary to the actor's duty, and (3) intended to be injurious to another." Wilcox v. City of Asheville, 730 S.E.2d 226, 230 (N.C. Ct. App. 2012). "An act is wanton when it is done of wicked purpose or when done needlessly, manifesting a reckless indifference to the rights of others." Bartley v. City of High Point, 873 S.E.2d 525, 534 (N.C. 2022). "Gross violations of generally accepted police practice and custom contributes to the finding that officers acted contrary to their duty." Id. The third element, intent to injure, "can either be 'actual' or 'constructive.'" Knibbs v. Momphard, 30 F.4th 200, 227 (4th Cir. 2022)

(quoting Wilcox, 730 S.E.2d at 231).  However, "a showing of mere reckless indifference is insufficient'" to show a constructive intent to injure.  Wilcox, 730 S.E.2d at 232; see also Schlossberg v. Goins, 540 S.E.2d 49, 56 (N.C. Ct. App. 2000) ("A Plaintiff may not satisfy [showing malice or corruption] through allegations of mere reckless indifference.").  "To amount to constructive intent, 'a plaintiff must show that the defendant's actions were 'so recklessly or manifestly indifferent to the consequences, where the safety of life or limb is involved, as to justify a finding of willfulness and wantonness equivalent in spirit to an actual intent.'" R.A., 36 F.4th at 545-46 (quoting Wilcox, 730 S.E.2d at 232).  "North Carolina law 'presumes that public officials will discharge their duties in good faith and exercise their powers in accord with the spirit and purpose of the law,' so evidence of malice 'must be sufficient by virtue of its reasonableness, not by mere supposition.'"  Knibbs, 30 F.4th at 227 (quoting Doe v. City of Charlotte, 848 S.E.2d 1, 12 (N.C. Ct. App. 2020)).

To sufficiently allege corruption that pierces public official immunity, a plaintiff must establish that a public official "acted for his own benefit."  Pritchard v. Mobley, 595 F. Supp. 3d 438, 452 (E.D.N.C. 2022).  "An act is corrupt when it is done with 'a wrongful design to acquire some pecuniary profit or other advantage.'"  Green v. Howell, 851 S.E.2d 673, 679 (N.C. Ct. App. 2020) (quoting State v. Hair, 442 S.E.2d 163, 165 (N.C. Ct. App. 1994)).  The Supreme Court of North Carolina has held "[t]he simple fact that defendant is paid for his services is insufficient to show that he acted with malice or corruption."  Grad, 321 S.E.2d at 891-92.

Simply inserting the words "malice" and "corrupt" before factual allegations is not sufficient to overcome the presumption officials will discharge their duties in good faith and in accordance with the law.  See Farrell, 625 S.E.2d at 134 (citing Myer v. Walls, 489 S.E.2d 880, 890 (N.C. 1997) and Dalenko v. Wake Cnty. Dept. of Human Servs., 578 S.E.2d 599, 604 (N.C.

Ct. App. 2003)); <u>see</u> <u>also</u> <u>Mitchell</u>, 796 S.E.2d at 82 ("Any evidence presented to rebut this presumption [of immunity] must be sufficient by virtue of its reasonableness, not by mere supposition. It must be factual, not hypothetical; supported by fact, not by surmise."); <u>Collum v. Charlotte-Mecklenburg Bd. of Ed.</u>, No.3:07-cv-534-RJC-DSC, 2010 WL 702462, at * 10 (W.D.N.C. Feb. 23, 2010) ("It should be noted that a conclusory allegation that a public official acted maliciously, with corruption, or outside the scope of their duties is not enough to overcome their public official immunity.") (citations omitted); <u>Bernstein v. Sims</u>, No. 5:22-CV-277-BO, 2023 WL 2763108, at *3 (E.D.N.C. Apr. 3, 2023) ("[P]laintiff has made the conclusory statement that [defendant] acted outside the scope of his authority, but her factual allegations are insufficient to pierce public official immunity [and] are therefore dismissed."); <u>Green v. Howell</u>, 851 S.E.2d 673, 679 (N.C. Ct. App. 2020) (holding that even though plaintiff used the words "malicious" and "with corrupt intent," "we are not required to treat this allegation of a legal conclusion as true" and plaintiff "failed to allege sufficient facts to overcome the heavy burden of rebutting the presumption" of public official immunity).

As an initial matter, Plaintiff fails to plead that any Individual Defendants acted with malice, corruption, or outside the scope of his official authority for any state law claims except his assault and battery claim and false imprisonment claim. For this reason alone, Plaintiff failed to state a claim plausible on its face against the Individual Defendants in their individual capacity to overcome public official immunity with respect to the state law claims except his assault and battery claim and false imprisonment claim. <u>R.A.</u>, 36 F.4th at 545 ("R.A. did not allege malice, or any other piercing exception, in the amended complaint. Therefore, she has not satisfied the basic burden to state a claim to relief that is plausible on its face. This pleading standard is not a

mere formality. It is especially important when immunity is at stake." (quoting <u>Twombly</u>, 550 U.S. at 570) (internal citation and quotations marks omitted)).

Further, with respect to the Individual Defendants' argument that they are entitled to public official immunity, Plaintiff responds only that "a reasonable inference can be drawn that the [I]ndividual [D]efendants acted with malice" because the Complaint alleges that they "indiscriminately used chemical weapons on crowds of mostly peaceful protests." (Doc. No. 33 at 21). However, Plaintiff is the master of his own Complaint and must plead factual allegations to support his claims, including the exceptions to the public official immunity where applicable. It is not within the Court's purview to guess what Plaintiff intended to plead. The mere allegation that officers "indiscriminately used chemical weapons" on "mostly peaceful protestors" does not plausibly provide factual allegations to support that any individual officer acted with malice. At the least, Plaintiff has not pled facts to support the third element of malice that the Individual Defendants intended to injure Plaintiff by throwing the device that landed near his feet nor does Plaintiff's briefing on this issue point to any facts pleading that the Individual Defendants acted with the intent to injure Plaintiff.

At most, Plaintiff has pled that using teargas and flashbang grenades near mostly peaceful protestors and bystanders was with reckless indifference. Significantly, however, mere reckless indifference does not establish intent to injure. <u>R.A.</u>, 36 F.4th at 545-46. And Plaintiff has not pled facts that in his Complaint that Defendants' actions were "'so recklessly or manifestly indifferent to the consequences, where the safety of life or limb is involved, as to justify a finding of willfulness and wantonness equivalent in spirit to an actual intent.'" <u>Id.</u> (quoting <u>Wilcox</u>, 730 S.E.2d at 232). The undersigned also observes that Plaintiff, in his own allegations, acknowledges

voluntarily picking up the device allegedly thrown in his direction, which ultimately exploded in his hand.  Id. ¶¶ 95-98.

For these reasons, the undersigned concludes that Plaintiff failed to plead state law tort claims against the Individual Defendants in their individual capacities sufficient to overcome the presumption of public official immunity.[9]  Accordingly, the undersigned respectfully recommends granting Defendants' Motion to Dismiss Plaintiff's state law claims against the Individual Defendants in their individual capacities.  The undersigned observes that Defendants did not otherwise move to dismiss the state law claims against the remaining Defendants and this conclusion should have no bearing on such claims.  See Lee v. Town of Seaboard, 863 F.3d 323, 330 n.6 (4th Cir. 2017) ("Under North Carolina law, however, public official immunity does not immunize a municipality from liability for torts committed by a municipal employee acting in his official capacity." (citing Wilcox, 730 S.E.2d at 230 and Lowder v. Payne, 739 S.E.2d 627 (N.C. Ct. App. 2013) (unpublished table opinion))); Knibbs v. Momphard, 30 F.4th 200, 231 (4th Cir. 2022).

### C.  North Carolina Constitutional Claims

An individual may have a direct cause of action against a state official under the provisions of the North Carolina Constitution only when there is no adequate remedy provided by state law. Corum v. Univ. of N.C. Bd. of Governors, 413 S.E.2d 276, 290-91 (N.C. 1992); Davis v. Town of S. Pines, 449 S.E.2d 240, 247-48 (N.C. Ct. App. 1994).  An adequate state remedy refers to the

---

[9] Plaintiff's Complaint does not allege, nor does Plaintiff argue in response to the Defendants' Motion to Dismiss, that the Individual Defendants acted with corruption or outside the scope of their official authority.  In any event, Plaintiff failed to plead corruption and also failed to plead that the officers acted outside the scope of their employment.  Indeed, the Complaint fails to even use the word "corrupt" once and alleges throughout that the acts underlying Plaintiff's injuries occurred within the scope of the Individual Defendants' normal duties.

"possibility of relief," not that plaintiff prevails on those state law claims.  Craig ex rel. Craig v. New Hanover Cnty. Bd. of Educ., 678 S.E.2d 351, 355-56 (N.C. 2009).  "[T]he affirmative defense of public official immunity does not render common law tort claims inadequate."  DeBaun v. Kuszaj, 767 S.E.2d 353, 357 (N.C. Ct. App. 2014).

As discussed above, Plaintiff has alleged numerous state law causes of action.  He has an adequate remedy under state law.  Hart for J.G. v. Union Cnty., No. 3:19-CV-00159-KDB-DCK, 2020 WL 710802, at *6 (W.D.N.C. Feb. 12, 2020).  Consequently, the undersigned respectfully recommends granting Defendants' Motion to Dismiss Plaintiff's direct claims under the North Carolina Constitution.

### D. Injunctive Relief

Plaintiff's Complaint seeks the following:

> That this Court issues an order that Defendants cannot utilize flash bombs, in a highly dense public space, on an individual engaged in peaceful, non-criminal activity in the City of Charlotte for the purpose of frightening them or punishing them for exercising their constitutional rights;

> Enjoins all unlawful practices complaint about herein and imposes affirmative injunctive relief requiring each Defendant and its partners and/or agents to take affirmative steps to counteract and cure their unlawful and discriminatory practices.

(Doc. No. 27 at 71).  The Court notes that this relief is demanded in the prayer for relief section of Plaintiff's Complaint and there is not a pending motion for injunctive relief at this time.  The Court is addressing this issue in the context of Defendants raising it in their Motion to Dismiss.

Defendants point to City of Los Angeles v. Lyons, 461 U.S. 95 (1983), arguing that Plaintiff lacks standing for injunctive relief.  In Lyons, the plaintiff was held in a chokehold by an officer until he passed out during a traffic stop where he was not compliant with the officer's commands.  461 U.S. at 97–98.  The plaintiff presented evidence of a series of unconstitutional

applications of a chokehold by the Los Angeles Police Department ("LAPD").  Id. at 98.  He

sought damages under § 1983 as well as an injunction against the use of chokeholds by LAPD.

The Supreme Court concluded that, while the plaintiff had standing to seek damages under § 1983,

he lacked standing for injunctive relief:

> In order to establish an actual controversy in this case, Lyons would have had not
> only to allege that he would have another encounter with the police but also to make
> the incredible assertion either, (1) that *all* police officers in Los Angeles *always*
> choke any citizen with whom they happen to have an encounter, whether for the
> purpose of arrest, issuing a citation or for questioning or, (2) that the City ordered
> or authorized police officers to act in such a manner.

Lyons, 461 U.S. at 105-06 (emphasis in original).  "The central holding in Lyons 'is based on the

obvious proposition that a prospective remedy will provide no relief for an injury that is, and likely

will remain, entirely in the past.'"  Johnson v. McCowan, 549 F. Supp. 3d 469, 477 (W.D. Va.

2021) (quoting Davis v. Cnty. of Amherst, No. 6:07CV00017, 2008 WL 591253, at *2 (W.D. Va.

Mar. 3, 2008)).

Here, while the Plaintiff has standing to seek certain damages under § 1983 consistent with

this Memorandum and Recommendation, the law is clear that Plaintiff does not have standing for

injunctive relief based on his past injury.  Lyons, 461 U.S. at 105-06; Johnson, 549 F. Supp. at

477.  As a result, the undersigned finds that Plaintiff's standing is lacking in that respect.  However,

the undersigned will not completely foreclose injunctive relief on other grounds consistent with

the Fourth Circuit's opinion in Wiley v. Mayor & City Council of Balt., 48 F.3d 773, 775-76 (4th

Cir. 1995) ("In light of Appellants' well-pleaded allegation that the Baltimore City Police

Department maintains a policy of requiring officers to take polygraph tests, we think there is a

sufficient likelihood, that some members of the local Fraternal Order of Police will, in the future,

be affected by this policy." (internal citations omitted)).  Therefore, the undersigned respectfully

recommends <u>granting in part</u> and <u>denying in part</u> without prejudice Defendants' Motion to Dismiss with respect to Plaintiff's request for injunctive relief.

### E. Insufficient Service

A "Rule 12(b)(5) motion to dismiss objects to a defect in the act (or lack) of delivery." <u>Washington v. Credit Fair, L.P.</u>, 3:22-cv-244-MOC-DSC, 2023 WL 1456294 at *2 (W.D.N.C. Feb. 1, 2023). Rule 4, which enumerates the requirements of service, "'should be liberally construed to effectuate service and uphold the jurisdiction of the court, thus insuring the opportunity for a trial on the merits.'" <u>Carr v. Reece</u>, No. 3:21-cv-00217-FDW-DCK, 2021 WL 5855646 (W.D.N.C. Dec. 9, 2021) (quoting <u>Karlsson v. Rabinowitz</u>, 318 F.2d 666, 668 (4th Cir. 1963)). District courts possess discretion to decide the best course of action for disposing of motions for insufficient service. <u>Martin v. Big Apple Deli</u>, 671 Fed. App'x. 48, 48 (4th Cir. 2016) (citing <u>Cardenas v. City of Chicago</u>, 646 F.3d 1001, 1004 (7th Cir. 2011)).

Defendants state that they are without knowledge sufficient to form a belief as to whether Defendants Jennings and Martinez have been properly served pursuant to Federal Rule of Civil Procedure 4. Defendants state that this should result in a dismissal for lack of personal jurisdiction. An affidavit of service regarding Defendant Jennings was filed on April 3, 2023. (Doc. No. 12). It appears that Plaintiff has not filed proof of service with the Court for Defendant Martinez.

In exercising its discretion, the undersigned will <u>grant</u> Plaintiff leave to serve Defendant Martinez and the undersigned respectfully recommends that Defendants' Motion to Dismiss relating to insufficient service of process be <u>denied</u> at this time. <u>Grayson v. Anderson</u>, 816 F.3d 262, 268 (4th Cir. 2016).

### F. Motion to Strike

Under Federal Rule of Civil Procedure 12(f), the "court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Motions under Rule 12(f) are generally disfavored and should be granted infrequently. Waste Mgmt. Holdings, Inc. v. Gilmore, 252 F.3d 316, 347 (4th Cir. 2001). "[A] motion to strike should only be granted if the allegations in questions can have no possible bearing upon the subject matter of the litigation." Pracht v. Saga Freight Logistics, LLC, No. 3:13–CV–529–RJC–DCK, 2014 WL 1281189, at *1 (W.D.N.C. Mar. 27, 2014) (citing Simaan, Inc. v. BP Products N. Am., Inc., 395 F.Supp.2d 271, 278 (M.D.N.C.2005)). Thus, in order to prevail on the motion, defendant must demonstrate that the allegations are the type envisioned by the Rule 12(f) and prejudicial. Id.; Brown v. Ins. for Family Centered Servs., Inc., 394 F.Supp.2d 724, 727 (M.D.N.C.2005) (citing Hare v. Family Pub. Serv., Inc., 342 F. Supp. 678, 685 (D. Md. 1972)).

Here, with respect to their Motion to Strike, Defendants do nothing more than assert in a conclusory fashion that "Plaintiff's Complaint is replete with immaterial and prejudicial allegations—most of which are based on things he presumably has conjured from sources other than his own person experience" and point to a few allegations. (Doc. No. 31-1 at 24). However, Defendants fail to explain in any way how the allegations to which they point are immaterial and prejudicial. Because Defendants have not demonstrated how the allegations to which they cite are the type envisioned by the Rule 12(f) and prejudicial, the undersigned will deny Defendants' Motion to Strike.

## IV.    ORDER

**IT IS, THEREFORE, ORDERED** that Plaintiff is **GRANTED** leave to serve Defendant Daniel Martinez if he has not already served Martinez.  Plaintiff shall file proof of service with respect to Defendant Martinez within **thirty (30) days** from the date of this Order.

**IT IS FURTHER ORDERED** that Defendants' Motion to Strike is **DENIED**.

## V.    RECOMMENDATION

For the foregoing reasons, the undersigned respectfully recommends that Defendants' Motion to Dismiss (Doc. No. 31) be **GRANTED IN PART** and **DENIED IN PART** as set forth above.  Specifically, the undersigned respectfully recommends that:

1. Defendants' Motion to Dismiss Plaintiff's § 1983 claim for First Amendment violations be **DENIED**;

2. Defendants' Motion to Dismiss Plaintiff's § 1983 for Fourth Amendment violations be **GRANTED** and the claim **DISMISSED WITH PREJUDICE**;

3. Defendants' Motion to Dismiss Plaintiff's § 1983 claim under <u>Monell</u> against the City for alleged First Amendment violations be **DENIED**, and Defendants' Motion to Dismiss Plaintiff's § 1983 claim under <u>Monell</u> against the City for alleged Fourth Amendment violations be **GRANTED** and the claim be **DISMISSED WITH PREJUDICE**;

4. Defendants' Motion to Dismiss Plaintiff's § 1983 claims for supervisory liability for alleged First Amendment violations be **DENIED**, and Defendants' Motion to Dismiss Plaintiff's § 1983 claims for supervisory liability for alleged Fourth Amendment violations be **GRANTED** and the claim be **DISMISSED WITH PREJUDICE**;

5. Defendants' Motion to Dismiss Plaintiff's § 1983 conspiracy claim be **GRANTED** and the claim be **DISMISSED WITH PREJUDICE**;

6. Defendants' Motion to Dismiss Plaintiff's claims against the Individual Defendants in their official capacities only be **GRANTED** and the Individual Defendants in their official capacities only be **DIMISSED WITH PREJUDICE**;

7. Defendants' Motion to Dismiss Plaintiff's state law claims against the Individual Defendants in their individual capacities only be **GRANTED** and the state law claims against the Individual Defendants in their individual capacities only be **DISMISSED WITH PREJUDICE**;

8. Defendant's Motion to Dismiss Plaintiff's direct claims under the North Carolina Constitution be **GRANTED** and the claims be **DISMISSED WITH PREJUDICE**;

9. Defendants' Motion to Dismiss with respect to Plaintiff's request for injunctive relief be **GRANTED IN PART** and **DENIED IN PART WITHOUT PREJUDICE**; and

10. Defendants' Motion to Dismiss for insufficient service of process be **DENIED**.

## VI.   TIME FOR OBJECTIONS

The parties are hereby advised that, pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72 of the Federal Rules of Civil Procedure, written objections to the proposed findings of fact, conclusions of law, and recommendation contained in this Memorandum must be filed within fourteen days after service of same. Failure to file objections to this Memorandum with the Court constitutes a waiver of the right to de novo review by the District Judge. Diamond v. Colonial Life, 416 F.3d 310, 315-16 (4th Cir. 2005). Moreover, failure to file timely objections will preclude the parties from raising such objections on appeal. Id. "In order 'to preserve for appeal an issue in a magistrate judge's report, a party must object to the finding or recommendation on

that issue with sufficient specificity so as reasonably to alert the district court of the true ground for the objection.'" <u>Martin v. Duffy</u>, 858 F.3d 239, 245 (4th Cir. 2017) (quoting <u>United States v. Midgette</u>, 478 F.3d 616, 622 (4th Cir. 2007)).

The Clerk is directed to send copies of this Memorandum and Recommendation and order to the parties' counsel and to the <u>Honorable Robert J. Conrad Jr.</u>

**SO ORDERED AND RECOMMENDED**.

Signed: March 1, 2024

Susan C. Rodriguez
United States Magistrate Judge